Gary E. Mason
gmason@masonlawdc.com
Donna F. Solen
dsolen@masonlawdc.com
MASON LLP
1625 Massachusetts Ave., NW
Ste. 605
Washington, DC 20036
Telephone: (202) 429-2290
Facsimile: (202) 429-2294

Michael F. Ram (SBN 104805)
mram@ramolson.com
RAM & OLSON LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

William Rubenstein (SBN 235312)
1545 Massachusetts Avenue
Cambridge MA 02138
Telephone: (617) 496.7320

*Attorneys for Plaintiffs
and the Proposed Class*

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER DYDYK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No.: CV 10 2897<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs CHRISTOPHER DYDYK, by and through his attorneys, allege on personal knowledge as to all facts related to himself and on information and belief as to all other matters, which are based upon, among other things, the investigation made by Plaintiff through his counsel and personal knowledge, as follows:

**PRELIMINARY STATEMENT**

1. This is a class action lawsuit, brought by, and on behalf of, a nationwide class of individuals who pre-ordered the iPhone 4 before its release on Thursday, June 24, 2010. The iPhones that Apple has delivered or plans to deliver to these customers exhibit an identical characteristic and inherent Defect in the phone's antenna. The Defect causes the phone to lose reception-- thus disabling both the phone and internet-surfing functions of the cell phone-- when the user holds the cell phone with the skin of the hand touching two adjacent parts of the phone.

2. To the best of plaintiff's knowledge and information, the Defect exists because the antenna for the iPhone 4 is an external band of metal surrounding the body of the phone. When users hold the phone, electrical conductivity in the skin creates a link between two parts of the antenna and causes the antenna to cease proper functioning.

3. The Defect renders the iPhone 4 unsuitable for its principal and intended purpose: namely, cell phone, smart phone, and web browsing service.

4. Apple has publicly admitted that the iPhone 4 will lose reception if held such that the skin of the user's hand bridges a small gap between two parts of the antenna. Apple has suggested that users purchase a "bumper"-- a plastic cover that surrounds the stainless steel external antenna-- sold separately by Apple for $29.

5. Class members paid either $199 or $299 when they pre-ordered the iPhone 4, expecting in return that Apple would send in exchange a fully functioning non-defective phone. Instead, Apple delivered a defective product that fails to adequately perform its intended function.

6. Apple's sale of the iPhone with this defect breaches the warranties due under California law.

7. Apple's sale of the iPhone with this unannounced defect, assuming Apple's prior knowledge of the defect, constitutes misrepresentation and fraud. In omitting to disclose the Defect in the iPhone 4, Apple perpetrated a massive fraud upon hundreds of thousands of unsuspecting customers who pre-ordered the iPhone 4 without any notice of the Defect.

8. The effect of Apple's warranties breaches and potential fraud and misrepresentation were only heightened when Apple announced that the defective product could, magically, be fixed by the purchase of another Apple product, the bumper, for another $29.

9. This court should ensure that Apple delivers what its customers had already bargained for and purchased - a non-defective iPhone - by ordering Apple to replace defective phones, deliver bumpers to all customers with iPhones, or pay damages.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and minimal diversity of citizenship. The defendant is incorporated in California and maintains its principal place of business in California. At least one member of the class is a citizen of a State different from the defendant.

11. This Court has general personal jurisdiction over the defendant in that their principal place of business is within this State.

12. This Court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District. Defendant Apple also resides here as it maintains its principle office and headquarters in this District.

## PARTIES

13. Plaintiff Christopher Dydyk is a resident of Cambridge, Massachusetts. Mr. Dydyk pre-ordered an iPhone 4 from Apple on June 20, 2010. Mr. Dydyk paid $199 dollars to Apple in exchange for Apple's promise that it would deliver a fully functioning iPhone 4 to Mr. Dydyk, with shipping scheduled for July 14 and delivery expected before July 19.

14. Defendant Apple Inc. is a California corporation headquartered at 1 Infinite Loop, Cupertino, California, 95014. Apple produces and sells a variety of consumer electronics, including the iPhone 4. Apple does business throughout the United States, and in particular, does business in the State of California and in this district.

**STATEMENT OF COMMON FACTS**

15. The iPhone is a popular brand of smart phone manufactured by Apple. Apple has released several incarnations of the iPhone prior to the iPhone 4- the iPhone, iPhone 3G, and iPhone 3GS. While each of these previous products in the iPhone line sold well, iPhones have a reputation among consumers for frequently dropping calls and for generally poor cell phone signal reception.

16. Unlike most other cell phones, including all previous incarnations of the iPhone series of smart phones, the iPhone 4 does not have an internal antenna that is protected by the exterior plastic body of the phone from contact with the user's hand. Instead, the antenna system for the iPhone 4 is a metal band that wraps around the outside of the phone's body.

17. The antenna system is composed of two separate antennas: the steel band on the upper left portion of the phone provides connectivity for WIFI and Bluetooth, while the steel band on the bottom and right portions of the phone provides cell phone reception.

18. For several weeks before releasing the iPhone 4, Apple marketed the external antenna as a product feature that would provide excellent reception. At Apple's Worldwide Developer Conference on June 7, 2010, Apple CEO Steve Jobs introduced the iPhone 4 and highlighted the external antenna as a design feature, referring to the antenna as "some brilliant engineering," and noting that the new design was something "that's never been done before." www.apple.com/quicktime/qtv/wwdc10/index.html. Mr. Jobs also emphasized the sleek, clean, and stylish appearance of the stainless steel band.

19. Apple's other published marketing materials specifically highlight the external antenna of the iPhone 4 as a product feature and promise that the iPhone external metal band serves as a fully functioning antenna. Apple's promotional webpage states, "The band provides impressive structural rigidity and allows for its incredibly thin, refined design. It also functions as both iPhone 4 antennas." http://www.apple.com/iphone/design/.

20. Because the iPhone is a popular product, many consumers pre-ordered the iPhone 4 before it was released. When a consumer pre-ordered the iPhone, the consumer paid the purchase price of the phone -- either $199 or $299 depending on the model -- in exchange for a

1    promise by Apple to deliver the fully functioning iPhone 4 at a later date. More than six hundred
2    thousand people pre-ordered the iPhone 4 before it was released.
3    http://www.apple.com/pr/library/2010/06/16iphone.html. The delivery dates promised by Apple
4    ranged from just after the release date to several weeks later.

5        21.    On Thursday June 24, 2010, Apple released the iPhone 4.

6        22.    Shortly after its release, the first consumers who received the new phone - whether
7    by purchasing the phone in a store or receiving the phone pursuant to a pre-ordering contract -
8    discovered a serious defect. When the user held the phone, if any portion of the user's skin
9    touched both the WIFI/Bluetooth and cell phone portions of the external antenna system, the
10   phone would lose reception, thus destroying the phone's ability to make and receive calls and
11   other messages, and to access the internet. http://news.cnet.com/8301-31021_3-20008799-
12   260.html.

13       23.    It is not the case that the "antenna defect" manifests only when the user contorts
14   his hand in some unnatural way. Any number of standard methods for holding a cell phone
15   would produce the defect, including: cupping the phone in the palm of the left hand; holding the
16   phone with the right hand with a finger covering a narrow gap between the two parts of the steel
17   antenna band; and holding the phone horizontally with the right thumb on what is normally the
18   lower left portion of the phone. Indeed, several of these methods for holding the phone are
19   demonstrated visually in Apple's own promotional materials.
20   http://forums.appleinsider.com/showthread.php?p=1660860#post1660860.

21       24.    The antenna defect occurs because of the design of the iPhone 4. The defect
22   affects every iPhone 4 unit, including units that have yet to be shipped to their purchasers.

23       25.    The defect created a flurry of criticism by consumers, tech blogs and other
24   publications that reported on the defect. Representative articles include an online post at
25   Macworld.com reporting that "reception bars on the iPhone 4 decrease when hands cover the
26   antennas." http://www.macworld.com/article/152301/2010/06/iphone4_antenna.html. Another
27   article reports, "touch the steel band with your other hand…. You will almost certainly see your
28   signal disappear." http://www.wired.com/gadgetlab/2010/06/iphone-4-loses-reception-when-

CLASS ACTION COMPLAINT

antenna-band-is-touched-firmware-issue/.

26. Late in the day on January 24, 2010, Apple sent a statement to PC Magazine admitting that gripping the phone in a certain way would result in "some attenuation of antenna performance." The statement advised users to "avoid gripping the lower left corner in a way that covers both sides of the blacks strip in the metal band, or simply use one of many available cases." http://www.pcmag.com/article2/0,2817,2365658,00.asp

27. Although Apple's statement to PC Magazine advises users to avoid gripping the iPhone in a way that covers "both sides of the black strip in the metal band," several video and photographic advertisements published by Apple depict the phone working perfectly as it is held in precisely that way. See, e.g. http://www.dailymail.co.uk/sciencetech/article-1289321/Apple-iPhone-4-Steve-Jobs-advice-complaints-new-phone-loses-reception-held.html.

28. Apple now recommends the purchase of a cover to fix this problem. Apple itself sells a cell phone case for the iPhone 4 that accomplishes this end by surrounding the antenna band and protecting it from contact with human skin. Apple has never before itself produced a case for its phones. Instead, Apple traditionally relies on other companies to produce cases for its products. When it released the iPhone 4, however, Apple simultaneously released this first ever cell phone case. Apple refers to its case as a "bumper."

29. Apple's "bumper" sells for $29.

30. Customers who pre-ordered the iPhone 4 received no notice of the antenna defect. Apple did not admit the existence of the defect until late in the day on June 24, long after pre-order customers had bought and paid for their iPhones and many other customers had purchased the iPhone 4 in stores. Since acknowledging the defect, Apple has not taken any action to address the problem for shipped or un-shipped units other than recommending purchase of the cover it sells for $29.

31. Apple induced its customers to enter pre-order contracts on the basis of its representations that the product would be a fully functioning non-defective phone. After its customers had each invested hundreds of dollars in the phone, and before many had even received their units, Apple informed them that they would need to spend an additional $29 on a

"bumper" produced by Apple in order to enjoy full functioning of the product.

32. For instance, Plaintiff Dydyk read about and researched the design of the iPhone 4, including the external antenna, prior to pre-ordering his iPhone 4. Mr. Dydyk has had difficulty receiving cell phone reception in his house and pre-ordered the iPhone 4 in the expectation that the new antenna design would lead to improved cell phone reception. Since the iPhone 4 was released, Mr. Dydyk has read about and researched the antenna Defect, and believes he will now be obligated to purchase Apple's "bumper" or another case for the iPhone 4 in order to enjoy full functioning of the phone.

33. Furthermore, although the addition of the "bumper" does ameliorate the antenna defect, it simultaneously detracts from the aesthetic value of the phone. Apple's advertisements, demonstrations and representations depict the iPhone 4 with a sleek, stylish stainless steel metal band surrounding the body of the iPhone 4. The plastic and rubber "bumper" that customers must now purchase in order to enjoy full functioning of the phone completely surrounds the stainless steel band and hides it from view. This represents a significant decrease in the value of the iPhone 4, and as a result the phones that customers receive from Apple are significantly different from the phones those customers agreed to purchase.

34. For instance, Plaintiff Dydyk saw images depicting the stainless steel band surrounding the iPhone 4. The stylish appearance of the iPhone 4 was attractive to Plaintiff Dydyk and formed a significant part of his reason for purchasing the phone. Mr. Dydyk believes he will be obligated to purchase Apple's "bumper" or another similar case that will cover the stainless steel antenna band, which will significantly detract from the phone's aesthetic value.

35. As a direct result of Apple's actions, Plaintiff and the consumers who comprise the Class have suffered damages, including but not limited to the difference in value between the product they ordered and the defective product that is delivered; the cost of fixing the defect by purchasing a $29 "bumper" for the iPhone; and the decrease in the aesthetic value of the phone caused by the necessary addition of the "bumper" or similar case for the phone.

## CLASS ALLEGATIONS

36. Plaintiff brings this complaint on behalf of himself and the class of all persons in

the United States who purchased the iPhone 4 before Apple publicly acknowledged the phone's defect on June 24, 2010.

37. The members of the putative class are so numerous that joinder of individual claims is impracticable. More than six hundred thousand people pre-ordered the iPhone 4 before it was released. http://www.apple.com/pr/library/2010/06/16iphone.html. Hundreds of thousands of other consumers purchased the iPhone 4 in the time between its official release and the time Apple first publicly acknowledged the defect.

38. There are significant questions of fact and law common to the members of the class. These issues include: whether the Apple iPhone 4 exhibits a design Defect causing the phone to lose reception when held in the user's hand; whether Apple had knowledge of this Defect before advertising and releasing the iPhone 4; whether Apple engaged in unfair business practices; whether Apple engaged in false and deceptive advertising; whether Apple breached implied and express warranties; and whether the members of the class are entitled to appropriate monetary and injunctive relief.

39. Plaintiff's claims are typical of the claims of the putative class. Plaintiff and all members of the putative Class purchased the iPhone 4 before Apple admitted to the existence of a Defect.

40. The proposed class representative will fairly and adequately represent the putative class because he has the class members' interest in mind, his individual claims are co-extensive with those of the class, and because he is represented by qualified counsel experienced in class action litigation of this nature.

41. A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative class is impracticable. Many members of the class are without the financial resources necessary to pursue this matter and the value of their claims is too small to attract contingent counsel. Absent class certification, it is likely that the wrongs addressed herein would escape redress. Even if some members of the class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would

1  proceed. Individual litigation increases the time and expense of resolving a common dispute
2  concerning Apple's actions toward an entire group of individuals. Class action procedures allow
3  for far fewer management difficulties in matters of this type and provide the unique benefits of
4  unitary adjudication, economy of scale and comprehensive supervision over the entire
5  controversy by a single court.

6      42. The putative class may be certified pursuant to Rule 23(b)(2) of the Federal Rules
7  of Civil Procedure because Apple has acted on grounds generally applicable to the putative class,
8  thereby making final injunctive relief and corresponding declaratory relief appropriate with
9  respect to the claims raised by the class.

10      43. The putative class may be certified pursuant to Rule 23(b)(3) of the Federal Rules
11  of Civil Procedure because questions of law and fact common to class members will predominate
12  over questions affecting individual members, and a class action is superior to other methods for
13  fairly and efficiently adjudicating the controversy and causes of action described in this
14  Complaint.

### COUNT ONE

**Unfair Business Practices in Violation of California
Business & Professions Code §17200**

18      44. Each of the above allegations is incorporated herein.

19      45. The acts, practices, misrepresentations and omissions by Apple described above,
20  and Apple's dissemination of deceptive and misleading advertising and marketing materials in
21  connection with the iPhone 4, constitute unlawful, unfair and/or fraudulent business acts and
22  practices and untrue and misleading advertising within the meaning of California Business &
23  Professions Code §17200 *et seq*.

24      46. In particular, the following statements, representations, and/or demonstrations by
25  Apple constitute unlawful, unfair and/or fraudulent business practices: the statements and
26  demonstrations made by Apple's CEO during the Worldwide Developer's Conference on June 7,
27  2010 (paragraph 18 above); the product description for the iPhone 4 displayed on Apple's
28  website (paragraph 19 above); and several promotional still photos and videos depicting the

/

iPhone 4 as fully functioning even when held such that the user's skin bridges the gap between two parts of the antenna (paragraphs 23 and 27 above). Each of the preceding statements, representations, and/or demonstrations by Apple falsely represent that the iPhone 4 is a fully functioning non-defective phone that does not require a protective case for full functionality. The preceding statements, representations, and/or demonstrations also depict the iPhone 4 as having a sleek, stylish stainless steel band that is not covered by any case. Such statements, representations and demonstrations are likely to deceive a reasonable consumer.

47. Apple engaged in unlawful, unfair and/or fraudulent business acts or practices by failing to inform consumers of material facts concerning the antenna defect. Apple knew that the iPhone 4 contained a characteristic defect causing the phone to lose reception when held in the hand, and Apple nonetheless determined to distribute the product without giving notice of the Defect to consumers or shipping a "fix" along with the product. Apple's failure to disclose the information regarding the antenna defect is material because had the omitted information been disclosed, Plaintiff would have been aware of it and would have behaved differently by waiting for Apple to announce whether and how it planned to address the defect before purchasing the product.

48. Apple had a duty to disclose to Plaintiff and the class the antenna defect because Apple either had exclusive knowledge of material facts regarding the antenna defect not known to the Plaintiff and the class, and/or Apple actively concealed material facts regarding the antenna defect from Plaintiff and the class.

49. Apple breached its duty to disclose to Plaintiff and the class by failing to disclose to them the defect in the iPhone 4 antenna.

50. Apple engaged in unlawful, unfair and/or fraudulent business practices when it responded to customer complaints about the defect by suggesting that customers spend an additional $29 on a "bumper" sold by Apple in order to eliminate the problem. Apple told consumers who had already paid either $199 or $299 dollars that they would have to spend an additional $29 in order to enjoy full functionality of the phone the consumers had already purchased.

51. Apple engaged in unlawful, unfair and/or fraudulent business acts or practices when it sought to induce consumers to pre-order the iPhone 4 by representing that the new phone has a sleek, clean, and stylish appearance because of the stainless steel antenna band surrounding the phone's body, and that the phone is of small size and light weight. At the time Apple made these representations, Apple new that full functioning of the phone would require the independent purchase and use of a "bumper" produced by Apple. When added to the iPhone 4, the "bumper" hides from view the stainless steel band surrounding the iPhone 4, and makes the phone both larger and heavier. In connection with the sale of its iPhone 4, Apple has violated the unfair and unlawful prong of section 17200 because it has violated Civil Code section 1770(a)(5) by representing that the iPhone 4 has characteristics, uses, or benefits, which it does not have, Civil Code section 1770(a)(7) by representing that the iPhone 4 is of particular standard, quality, or grade, and Civil Code section 1770(a)(9) by advertising goods with intent not to sell them as advertised. For those reasons, it is also an unfair and unlawful business act and/or practice pursuant to Business and Professions code section 17200 *et seq*.

52. Apple's unlawful, unfair and/or fraudulent business acts and practices present a continuing threat to plaintiff, Class members and the general public in that Apple has not corrected its wrongdoing, provided a fix for the Defect to its customers, or provided compensation for the damages it has caused to its customers.

53. The Plaintiff has standing to assert these claims on behalf of all purchasers of the iPhone 4 because the Plaintiff has suffered injury in fact and has lost money as a result of Apple's conduct. In particular, the Plaintiff paid $199 to Apple in exchange for and in reliance on Apple's misrepresentations and omissions regarding the phone's functioning and appearance. The Plaintiff would not have purchased the iPhone 4 if the Plaintiff had known of the antenna defect at the time the Plaintiff pre-ordered his phone. Instead, the Plaintiff would have waited for Apple to announce whether and how it planned to address the defect before purchasing the product. Furthermore, the Plaintiff relied on the aforementioned misleading statements, representations, and demonstrations made by Apple regarding the functioning and appearance of the iPhone 4. In particular, the Plaintiff read and watched promotional statements and videos on

the Apple website. The Plaintiff also watched a video clip of the June 7 Worldwide Developers Conference at which Steve Jobs introduced the iPhone 4. These promotional materials and statements led the Plaintiff to believe that the iPhone 4 would be a fully functioning phone without the need for a protective "bumper" or other case, and that the phone would have the stylish appearance of an external stainless steel band. The Plaintiff made his decision to purchase an iPhone 4 in reliance on these misleading statements, representations, and demonstrations.

54. Pursuant to California Business & Professions Code §17203, Plaintiff, on behalf of himself, the other Class members, and the general public, seek an order of this Court requiring Apple to provide a "bumper" free of charge to every person who purchased an iPhone 4. Plaintiffs, on the same basis, seek restitution of any monies wrongfully acquired or retained by Apple and disgorgement of Apple's ill-gotten gains obtained by means of its unfair and/or fraudulent practices.

## COUNT TWO

### Consumers Legal Remedies Act
### Civil Code §1750, et seq.

55. Each of the above allegations is incorporated herein.

56. The acts, practices, misrepresentations and omissions by Apple described above, and Apple's dissemination of deceptive and misleading advertising and marketing materials in connection with the iPhone 4, constitute unfair or deceptive acts or practices in a transaction that results in the sale of goods.

57. By making the misleading representations and omissions regarding the iPhone 4 described in paragraphs 46 through 51 above, Apple falsely represented that goods have characteristics, uses, and/or benefits that they do not have, in violation of Cal. Civ. Code § 1770 (a)(5).

58. By making the misleading representations and omissions regarding the iPhone 4 described in paragraphs 46 through 51 above, Apple falsely represented that goods were of a particular standard, quality, or grade, or that the goods were of a particular style or model, in violation of Cal. Civ. Code § 1770 (a)(7).

59. By making the misleading representations and omissions regarding the iPhone 4 described in paragraphs 46 through 51 above, Apple advertised goods with intent not to sell them as advertised in violation of Cal. Civ. Code § 1770 (a)(9).

60. The Plaintiff relied on Apple's statements and omissions regarding the iPhone 4 and suffered economic harm as described in paragraph 53 above.

61. Pursuant to Cal Civ. Code §§ 1780 (a)(2) & (a)(5), Plaintiff on behalf of himself, the other Class members, and the general public, seek injunctive. With the filing of this action, Plaintiff is providing defendant with notice of its alleged violations of the CLRA pursuant to Civil Code section 1782(a). If, after 30 days of the date of the notification letter, Defendants have failed to provide appropriate relief for its violation of the CLRA, Plaintiffs will amend this Complaint to seek compensatory, monetary and punitive damages, in addition to equitable and injunctive relief.

## COUNT THREE

### Untrue and Misleading Advertising in Violation of Cal. Bus. & Prof. Code §17500, *et seq.*

62. Each of the above allegations is incorporated herein.

63. California Business & Professions Code §17500 prohibits various deceptive practices in connection with the dissemination in any manner of representations for the purpose of inducing, or which are likely to induce, directly or indirectly, customers to purchase consumer electronics products such as the cell phones here at issue.

64. Apple's acts, practices, misrepresentations and omissions were intended to, and did, induce the consuming public to purchase the cell phones, and violated Business & Professions Code §17500, in that Apple caused advertisements to be placed before the general public, but Apple's product did not conform to those advertisements.

65. As a result of the foregoing, Plaintiff, the members of the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order requiring disgorgement of Apple's ill gotten gains, as described above.

## COUNT FOUR

### Breach of Express Warranty

66.   Each of the above allegations is incorporated herein.

67.   Apple as the designer, manufacturer, distributor and seller expressly warranted that the iPhone 4 cell phones being sold to the general public would operate properly and without defects, and would therefore receive and make calls and provide internet connectivity when held in the user's hand, without the need for a separately sold "bumper."

68.   In addition, Apple's promotional statements, representations, and demonstrations regarding the iPhone 4 became part of the basis of the bargain between consumers and Apple, thus creating express warranties that the product purchased by the plaintiff and the Class would conform to Apple's representations. Cal. Com. Code § 2313.

69.   In addition, Apple's own video advertisements demonstrate the iPhone 4 being held by a hypothetical user in a way that would destroy cell phone receptivity if duplicated by an actual user. These demonstrations constitute a sample or model that forms a part of the basis of the bargain between Apple and the consumer, and thus create an express warranty that the product purchased by the plaintiff would conform to the model. Cal. Com. Code § 2313.

70.   Apple breached its express warranties because the iPhone 4 units that Apple has delivered or will deliver to the class members do not conform to the promises or affirmations of fact made by Apple to the plaintiff and members of the class. Cal. Com. Code §2313.

71.   Plaintiff and the Class are entitled to specific performance under Cal. Com. Code § 2716. The phones pre-ordered by the class are unique goods within the meaning of that statute. The iPhone 4 is sold exclusively by Apple and has a unique and distinctive design and functioning, such that members of the class are unable to "cover" by purchasing the same product elsewhere. Plaintiff on behalf of the Class demands that Apple fulfill its contractual obligation to the members of the Class by delivering a "bumper" to each class member free of charge.

72.   Those Class members who have "covered" by purchasing "bumpers" or other covers for their iPhones are entitled to damages for the cost of covering. Cal. Com. Code § 2712.

73.   In the alternative and to the extent that the Defect is not fully remedied by the

addition of a "bumper" to the phone, Plaintiff and the Class are entitled to monetary damages in the amount of the difference in value between a fully functioning phone as warranted by Apple and the defective phone actually delivered to class members. Cal. Com. Code § 2714.

## COUNT FIVE

### Breach of Implied Warranty

74. Each of the above allegations is incorporated herein.

75. Apple is a merchant engaged in the business of selling electronic devices to consumers. Apple's sale of the iPhone 4 is subject to an implied warranty of merchantability. Cal. Com. Code § 2314. Apple breached or will breach this warranty by delivering phones that: (1) do not pass without objection in the trade under the description of the pre-order contract; (2) are not fit for the ordinary purpose for which such goods are used; and (3) do not conform to promises and affirmations of fact made on the container and labels.

76. Apple knows or has reason to know that customers who purchase the iPhone 4 do so with the intent of using the iPhone 4 as a cell phone, smart phone, and internet browser. Furthermore, Plaintiff and members of the Class purchased the iPhone 4 in reliance on Apple's skill and judgment in providing a device fit for use in those functions. Apple's sale of the iPhone 4 is therefore subject to an implied warranty of fitness for the particular purpose. Cal Com. Code § 2315. Apple breached or will breach this warranty by delivering a product that, because of the antenna defect, is not fit for the purpose of use as a phone, smart phone, and internet browser.

77. Plaintiff on behalf of the Class demands that Apple specifically perform on its contractual obligation to the members of the Class by delivering a "bumper" to each class member free of charge. Cal. Com. Code § 2716. Plaintiff further demands damages for those members who have "covered" by purchasing a "bumper" or other cover in the amount of the cost to cover. Cal. Com. Code § 2712.

78. In the alternative and to the extent that the Defect is not fully remedied by the addition of a "bumper" to the phone, Plaintiff demands monetary damages in the amount of the difference in value between a fully functioning phone as warranted by Apple and the defective

phone actually delivered to class members. Cal. Com. Code § 2714.

**PRAYER FOR RELIEF**

79.  **WHEREFORE** Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand judgment against defendant Apple as follows:

   a.  For an order mandating that Apple ship a "bumper" free of charge to each consumer who pre-ordered an iPhone 4 before it's release date;

   b.  Alternatively, for a judgment of money damages against Apple in the amount of the purchase price plus sales tax for the "bumper";

   c.  Alternatively and to the extent that providing a "bumper" does not fully cover the difference in value between a fully functional iPhone and the phone as delivered, for a judgment of money damages in the amount of the difference in value between the iPhone 4 as warranted and promised to the Class members and the defective phone as delivered.

   d.  Alternatively, for any consumer who so desires, a full refund of the purchase price of the iPhone upon return thereof;

   e.  Injunctive relief;

   f.  Awarding pre- and post-judgment interest;

   g.  Awarding attorneys fees, expenses, and costs; and

   h.  Providing such other and further relief as this Court may deem just and proper.

Dated: June 30, 2010            By:  *Michael F. Ram*
                                     Michael F. Ram (SBN 104805)
                                     mram@ramolson.com
                                     RAM & OLSON LLP
                                     555 Montgomery Street, Suite 820
                                     San Francisco, California 94111
                                     Telephone: (415) 433-4949
                                     Facsimile: (415) 433-7311

                                     Gary E. Mason
                                     gmason@masonlawdc.com
                                     Donna F. Solen
                                     dsolen@masonlawdc.com
                                     MASON LLP
                                     1625 Massachusetts Ave., NW. Ste. 605
                                     Washington, DC 20036
                                     Telephone: (202) 429-2290
                                     Facsimile: (202) 429-2294

///

William Rubenstein (SBN 235312)
1545 Massachusetts Avenue
Cambridge MA 02138
Telephone: (617) 496-7320

Attorneys for Plaintiffs
and the Proposed Class

CLASS ACTION COMPLAINT